# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sylvia Koh and David Green, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, <br><br> Defendant. | Case No. ___20-4425___ <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs David Green, a resident of Los Angeles County, California, and Sylvia Koh, a resident of San Mateo County, California ("Plaintiffs") individually and on behalf of other similarly situated individuals, by and through their counsel, hereby bring this action against Defendant The Kraft Heinz Company ("Kraft" or "Defendant") regarding the deceptive labeling, marketing, and sale of Defendant's "Kraft Natural Cheese" products ("the Products") as "natural" when they were made from milk produced with artificial growth hormones, and allege the following based upon information, belief, and the investigation of their counsel:

## INTRODUCTION

1.      Due to concerns about health, animal welfare, and sustainability, consumers are increasingly concerned with how their food is produced.

2.      Consumers are concerned that the use of artificial growth hormones in animals raised for food is inhumane and contributes to health problems both for the animals and for the humans who consume the food. One such artificial hormone is recombinant bovine somatotropin

(rbST), which is also known as recombinant bovine growth hormone (rbGH).

3.    Kraft knows that consumers seek out and wish to buy dairy products made from cows raised without the use of rbST. Kraft also knows that consumers will pay more for such products than they will for products made with artificial hormones.

4.    To capture this growing market, Kraft announced on January 9, 2019, that "KRAFT Natural Cheese is Now Made from Milk without the Artificial Hormone rbST."[1] Prior to that announcement, Kraft labeled and marketed the Products[2] as "natural," even though they were

---

[1] Kraft Heinz, *KRAFT Natural Cheese is Now Made from Milk without the Artificial Hormone rbST – and is as Delicious as Ever*, The Kraft Heinz Company (Jan. 9, 2019, 10:00 AM). https://web.archive.org/web/20190920054942/https://news.kraftheinzcompany.com/press-release/brand/kraft-natural-cheese-now-made-milk-without-artificial-hormone-rbst-%E2%80%93-and-delicio.

[2] 2% Milk Cheddar & Monterey Jack Natural Cheese Cubes, 2% Milk Colby Jack Shredded Natural Cheese, 2% Milk Mexican Style Four Cheese, 2% Milk Sharp Cheddar Shredded Cheese, Big Slice Aged Swiss Natural Cheese Slices, Big Slice American Cheese Slices, Big Slice Chipotle Natural Cheese Slices, Big Slice Colby Jack Natural Cheese Slices, Big Slice Hot Habanero Natural Cheese Slices, Big Slice Jalapeno White Cheddar Natural Cheese Slices, Big Slice Mild Cheddar Natural Cheese Slices, Big Slice Pepper Jack Natural Cheese Slices, Big Slice Sharp Cheddar Natural Cheese Slices, Big Slice Swiss Natural Cheese Slices 10 slices, Cheddar & Monterey Jack Natural Cheese Cubes, Chipotle Natural Cheese Block, Colby & Monterey Jack Big Cheese Snack, Colby & Monterey Jack Finely Shredded Natural Cheese, Colby & Monterey Jack Natural Cheese Cubes, Colby Jack & Mild Cheddar Natural Cheese Slices, Colby Jack Finely Shredded Natural Cheese, Colby Jack Natural Cheese, Colby Natural Cheese, Extra Sharp Cheddar Cheese, Extra Sharp Cheddar Natural Cheese, Extra Sharp Natural Cheddar Cheese Block, Extra Sharp White Cheddar Natural Cheese Slices, Extra Thin Swiss Natural Cheese Slices, Fat Free Natural Cheddar Cheese, Fat Free Shredded Mozzarella Natural Cheese, Fat-Free Cheddar Shredded Natural Cheese, Finely Shredded Triple Cheddar Natural Cheese, Havarti Natural Cheese Slices, Hot Habanero Shredded Natural Cheese, Italian Five Cheese Shredded Natural Cheese, Jalapeno Cheddar Shredded Natural Cheese, Jalapeno Low-Moisture Part-Skim String Cheese, Low-Moisture Part-Skim Mozzarella String Cheese, Medium Cheddar Natural Cheese, Medium Natural Cheddar Cheese Block, Mexican Style 2% Milk Shredded Natural Four Cheese, Mexican Style Cheddar Jack Finely Shredded Natural Cheese, Mexican Style Four Cheese Shredded Natural Cheese, Mexican Style Four Finely Shredded Natural Cheese, Mexican Style Taco Finely Shredded Natural Cheese, Mild Cheddar 2% Milk Finely Shredded Natural Cheese, Mild Cheddar Big Cheese Snack, Mild Cheddar Finely Shredded Natural Cheese, Mild Cheddar Natural Cheese, Mild Cheddar Natural Cheese Cubes, Mild Cheddar Shredded Natural Cheese, Mild Natural Cheddar Cheese Block, Monterey Jack Cheese Cracker Cuts, Monterey Jack Shredded Natural Cheese, Mozzarella & Cheddar Twists, Mozzarella 2% Milk Shredded Natural Cheese, Mozzarella Finely Shredded Natural Cheese, Mozzarella Low-Moisture Part-Skim Cheese, Mozzarella Shredded Natural Cheese, Mozzarella String Cheese, Muenster Natural Cheese Slices, Natural Cheddar & Monterey Jack Marbled Cheese Block, Natural Cheese Snacks Mozzarella Low-Moisture Part-Skim String Cheese, Natural Colby Cheese Block, Natural Colby Jack 2% Milk Cheese Block, Natural Colby Jack Cheese Block, Natural Hot Habanero Cheese Block, Natural Jalapeno Cheese Block, Natural Monterey Jack Cheese Block, Parmesan Finely Shredded Natural Cheese, Pepper Jack & Sharp Cheddar Natural Cheese Slices, Pepper Jack Monterey Jack Cheese with Jalapeno Peppers, Pepper Jack Shredded Natural Cheese, Pizza Style Mozzarella & Cheddar Shredded Natural Cheese, Provolone Natural Cheese Slices, Reduced Fat 2% Milk Mozzarella String Cheese, Reduced Fat Mozzarella String Cheese with 2% Milk, Sharp Cheddar Finely Shredded Cheese, Sharp Cheddar Finely Shredded Natural Cheese, Sharp Cheddar Natural Cheese, Sharp Cheddar Natural Cheese Cubes, Sharp Natural Cheddar 2% Milk Cheese Block, Sharp Natural Cheddar Cheese Block, Sharp White Cheddar Shredded

made with milk from cows administered rbST.

5.      Kraft's claim that its Products were "natural" was false, deceptive, and misleading in that they were made with milk from cows who were given rbST, which is an artificial hormone, and which unnaturally increased the cows' milk production.

6.      While many of the Products are now made from milk produced without the artificial hormone rbST (collectively, the "Type A Products"), certain Kraft Natural Cheese products (e.g., varieties containing parmesan, asiago, and Romano cheese) continue to be made with milk from cows who were administered rbST (collectively, the "Type B Products").

7.      Reasonable consumers, seeing Kraft's "natural" representations, would expect that the Products were made without the use of an "artificial hormone" such as rbST.

8.      In sum, for years, Kraft deceived consumers into believing the Type A Products were made without the use of added synthetic hormones, when in fact, until recently, they were produced with milk from cows who were given such hormones. Kraft continues to deceive consumers with regard to the Type B Products, which are currently made with milk from cows who were administered rbST.

9.      By deceiving consumers about the nature and quality of the Products, Kraft has sold a greater volume of the Products, charged higher prices for the Products, and taken away market

_____

Natural Cheese, Shredded Colby & Monterey Jack Natural Cheese Blend, Shredded Mexican Style Four Cheese, Shredded Mild Cheddar Natural Cheese, Shredded Mozzarella 2% Milk Natural Cheese, Shredded Mozzarella Natural Cheese, Shredded Parmesan Cheese Shaker, Shredded Parmesan, Romano & Asiago Shredded Natural Cheeses, Shredded Sharp Cheddar Natural Cheese, Shredded Smoky Bacon Cheddar Cheese, Slim Cut Extra Sharp White Cheddar 2% Milk Natural Cheese Slices, Slim Cut Mozzarella Natural Cheese Slices, Slim Cut Sharp Cheddar 2% Milk Natural Cheese Slices, Slim Cut Swiss 2% Milk Natural Cheese Slices, Smoky Bacon Cheddar Cheese Big Slices, String Jalapeno Low-Moisture Part-Skim Cheese, String Low-Moisture Part-Skim Mozzarella Cheese, Swiss Shredded Natural Cheese, Triple Cheddar Finely Shredded Natural Cheese, Twists 2% Mozzarella & Cheddar Natural Cheese, and Twists Mozzarella & Cheddar Natural Cheese Snacks.
Discovery may reveal that additional Kraft Natural Cheese products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

share from competing products, thereby increasing its own sales and profits.

10.     Because Kraft's labeling and advertising of the Products has been materially deceptive about the true nature and quality of the Products, Plaintiffs bring this deceptive advertising case on behalf of a class of consumers who purchased the Products in the United States while the Products contained rbST, including: (1) a subclass of all persons who purchased the Type B Products in the United States; (2) a subclass of all persons who purchased the Products in California; and (3) a subclass of all persons who purchased the Type B Products (as defined herein) in California. Plaintiffs seek relief including actual damages, interest, costs, reasonable attorneys' fees, and an order enjoining Kraft's unlawful and deceptive acts. Even today, proposed class members are purchasing the misrepresented Products, and they will continue to do so in the future unless Kraft's conduct is stopped.

## JURISDICTION AND VENUE

11.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").  There are at least 100 members in the proposed classes.  Plaintiffs are citizens of California.  On information and belief, Defendant Kraft is a citizen of Delaware, Illinois, and Pennsylvania. The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

12.     This Court has personal jurisdiction over the Defendant in that it regularly conducts and transacts business in California, purposefully avails itself of the laws of California, markets its Products to consumers in California, and distributes its Products to numerous retailers in California.

13.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading

CLASS ACTION COMPLAINT

labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this District.

## **PARTIES**

14.     The Kraft Heinz Company is a Delaware business corporation that maintains its principal places of business in Chicago, Illinois and Pittsburgh, Pennsylvania.

15.     The Kraft Heinz Company was formed in July 2015 as a result of the merger of the H.J. Heinz Company with Kraft Foods Group, Inc. Defendant is the successor-in-interest to Kraft Foods Group, Inc.

16.     Kraft manufactures and/or causes the manufacture of the Products. Kraft also advertises, markets, and distributes the Products in California. Kraft created and/or authorized the false and deceptive labeling and advertising of the Products.

17.     Plaintiff Green is a citizen of the State of California, and a resident of Los Angeles County.

18.     Plaintiff Koh is a citizen of the State of California, and a resident of San Mateo County.

19.     At all times mentioned herein, Plaintiffs were and are individual consumers over the age of 18.

20.     During the time period in which the following products were made with the artificial hormone rbST, Plaintiff Green purchased Kraft's Shredded Sharp Cheddar, Shredded Mild Cheddar, and Shredded Mexican Style Four Cheese Products labeled "Natural Cheese." From 2012-2020, Plaintiff Green purchased the above Products at least five times a year at Ralphs and Gelson's Market stores in the Los Angeles area.

CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

1

2      21.      During time periods in which the following products were made with the artificial

3
hormone rbST, Plaintiff Koh purchased Kraft's Mozzarella Shredded, Mozzarella String Cheese,
4

5   Shredded Parmesan Cheese, Parmesan Finely Shredded, and Havarti slice Products labeled

6   "Natural Cheese." From 2015-2020, Plaintiff Koh purchased at least one of the above Products on

7   a monthly basis at a Safeway store in the Daly City area.

8

9
  
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

 

22.     In deciding to make their purchases, Plaintiffs saw, relied upon, and reasonably believed Kraft's "natural" representations.

23.     Plaintiffs were willing to pay more for Kraft's Products because they expected the Products to have been made without the use of artificial hormones.

24.      Had Plaintiffs known at the time that Kraft's Products were made from cows who were given rbST, they would not have purchased or continued to purchase the Products.

25.     Plaintiff Koh ceased purchasing the Products because Kraft was labeling their Products as natural when they were not.

26.     Plaintiff Koh continues to purchase cheese products and intends to continue purchasing cheese products in the future, but she does not currently purchase the Type B Products.

27.     Plaintiff Koh wishes to be able to continue purchasing the Type B Products and, therefore, wishes to see them truthfully made without antibiotics. Moreover, Plaintiff Koh is aware that members of her proposed class are currently purchasing, and will continue to purchase, Kraft's

CLASS ACTION COMPLAINT

1   Type B Products, unaware that the "Natural" representations are not correct, unless Kraft's conduct

2   is enjoined.

3                                    **FACT ALLEGATIONS**

4

5   **A. Kraft Falsely and Deceptively Represented That the Products Were Natural.**

6        28.     During any applicable statute of limitations period, Kraft's packaging and

7   advertising for the Products featured the claim "Natural Cheese."

8



21        29.     Reasonable consumers interpret Kraft's "natural" claim as meaning that its

22   Products are made with milk produced without the use of artificial hormones.

30.     A 2015 nationally representative consumer survey conducted by Consumer Reports Survey Group found that 64% of consumers believe the claim "natural" on food means that no artificial growth hormones were used.[3]

31.     A 2019 survey commissioned by the Corn Refiners Association found that more than half of consumers believe the claim "natural" for food means "no hormones and antibiotics."[4]

32.     There is nothing natural about the use of rbST in dairy production. rbST is synthetically produced using genetic technology. It is injected in dairy cows to artificially increase milk production and thereby reduce the cost of milk production.

33.     Kraft itself refers to rbST as an "artificial" hormone.[5]

**B.  Kraft's "Natural" Claims Are Material to Reasonable Consumers.**

34.     Although rbST is legally allowed for use in dairy cows in the United States, it has been banned in Canada, the European Union, and other countries.

35.     The use of rbST puts cows at significantly higher risk for serious health problems. Studies have found that cows treated with rbST suffer a 55% increased risk of lameness, 40% increased risk of reproductive problems, and 25% increased risk of clinical mastitis.[6]

36.     The greater incidence of mastitis contributes to increased use of antibiotics in dairy cows, which in turn contributes to antibiotic resistance. According to the Centers for Disease

_____

[3] Consumer Reports Survey Group, *Natural and Antibiotics Label Survey: 2015 Nationally Representative Phone Survey*, https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf.
[4] Jayson Lusk, Consumer Perceptions of Healthy and Natural Food Labels, (Jan, 15, 2019), https://static1.squarespace.com/static/502c267524aca01df475f9ec/t/5c4df49440ec9a53af435ab4/1548612761167/report_revised.pdf.
[5] *Supra*, note 1.
[6] I. R. Dohoo, et al., *A meta-analysis review of the effects of recombinant bovine somatotropin: Effects on animal health, reproductive performance, and culling*, 67 Can. J. Vet. Res. 252 (Oct. 2003), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC280709/.

CLASS ACTION COMPLAINT

Control, "Antibiotic resistance—the ability of germs to defeat the drugs designed to kill them—is one of the greatest global public health challenges of our time."[7]

37.   Because of their poorer overall welfare, rBST-treated cows are culled at a higher rate than nontreated cows.[8]

38.   Furthermore, studies have suggested that rbST use may increase the risk of certain cancers in humans who consume milk products by elevating levels of insulin-like growth factor 1 (IGF–1).[9]

39.   Milk produced with rbST also can be inferior to milk produced without synthetic hormones. Compared to milk produced without rbST, milk from cows treated with rbST can have increased fat content and decreased level of proteins, as well as higher counts of somatic cells (*i.e.*, pus), which makes the milk turn sour more quickly.[10]

40.   Concerned about the risks associated with artificial hormones in dairy production, consumers want to avoid buying products made with rbST and will pay more for products made without artificial hormones.

41.   Kraft knows this. Indeed, Kraft cited the fact that "[o]ver half of all consumers try to avoid added hormones in their food" as a reason why it stopped using milk from cows treated with rbST in certain of the Products.[11]

---

[7] Centers for Disease Control, *Antibiotic Resistance Threats in the United States, 2019*, https://www.cdc.gov/drugresistance/pdf/threats-report/2019-ar-threats-report-508.pdf, at 3.

[8] The Humane Society of the United States, *An HSUS Report: The Welfare of Cows in the Dairy Industry*, https://www.humanesociety.org/sites/default/files/docs/hsus-report-animal-welfare-cow-dairy-industry.pdf, at 8.

[9] *Federal Court Strikes Down Ohio Ban on RBGH-Free Labels on Dairy Products*, Center for Food Safety (Sept. 30, 2010), https://www.centerforfoodsafety.org/press-releases/810/federal-court-strikes-down-ohio-ban-on-rbgh-free-labels-on-dairy-products.

[10] *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 636–37 (6th Cir. 2010).

[11] *Supra*, note 1.

42.     Kraft has labeled and advertised its Products as "Natural Cheese" to capture consumers who wish to avoid foods made with artificial hormones.

**C. Kraft's False and Misleading Claims Harm Consumers.**

43.     Kraft's conduct in labeling and advertising the Products as "natural" has deceived and/or is likely to deceive the public. Consumers have been deceived into believing that the Products were made with milk from cows who had not been given artificial hormones, when in fact rbST has been used to produce the milk in the Products.

44.     The labels have never informed consumers when rbST was used to make the milk in the Products. Furthermore, ordinary consumers do not have sufficient knowledge about the dairy industry to understand whether rbST was used in the production of the Products.

45.     Consumers lack the information and scientific knowledge necessary to determine whether the Products are in fact "natural" and to know or to ascertain the true quality of the Products.

46.     Reasonable consumers must and do rely on Kraft to report honestly whether the Products are made with the use of artificial hormones.

47.     Kraft has deceptively and misleadingly concealed material facts about the Products it marketed as "natural," namely, when the Products have been made with milk produced with artificial hormones.

48.     Kraft knows that rbST is artificial. Kraft also knows that rbST artificially boosted production of milk it used to make its Products.  Kraft thus knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised.

49.     Kraft's use of milk produced with rbST was not disclosed to Plaintiffs or to the class of consumers they seek to represent.

CLASS ACTION COMPLAINT

50.   Kraft's concealment tolls the applicable statute of limitations.

51.   In making the false, misleading, and deceptive representations at issue, Kraft also knew and intended that consumers would choose to buy, and would pay more for, products promoted as "natural," furthering Kraft's private interest of increasing sales of its products and decreasing the sales of its competitors' products that are truthfully marketed.

52.   Kraft intended for consumers to rely on its representations, and reasonable consumers did in fact so rely. As a result of its false and misleading labeling and advertising, Kraft was and is able to sell the Products to consumers in the State of California and to realize sizeable profits.

53.   During the time periods in which the products were made with the artificial hormone rbST, Plaintiffs and members of the Classes described below relied on Kraft's "Natural Cheese" misrepresentations when purchasing the Products.  Plaintiffs and members of the Classes described below paid a premium for the Products based upon the misrepresentations, and they purchased Products they otherwise would not have bought had they known the truth about the use of artificial hormones to produce Kraft's Products. As a result, Plaintiffs and Class Members suffered an injury. Contrary to representations on the Products' labeling and advertising, consumers received Products that were not natural.

54.   Had Kraft not made the false, misleading, and deceptive representations, Plaintiffs and the class members would not have been willing to pay the same amount for the Products they purchased and would not have been willing to purchase the Products.

55.   Upon information and belief, Kraft has profited enormously from its falsely and deceptively marketed products.

CLASS ACTION COMPLAINT

## CLASS ALLEGATIONS

56.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

57.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated individuals within the United States (the "Class") defined as follows: All consumers who purchased the Products in the United States within the applicable statute of limitations, while the Products contained rbST, and until the date of class certification (the "Class Period").

58.     Excluded from the Class are (1) Defendant, any entity or division in which a Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

59.     Included in the Class, to the extent necessary, is: (1) a subclass of all persons who purchased the Type B Products (as defined herein) in the United States during the Class Period (the "Nationwide Type B Subclass"); (2) a subclass of all persons who purchased the Products in California during the Class Period (the "California Subclass"); and (3) a subclass of all persons who purchased the Type B Products (as defined herein) in California during the Class Period (the "California Type B Subclass") (the California Subclass and the California Type B Subclass are collectively referred to herein as the "California Subclasses").

60.     There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)  whether Defendant is responsible for the labeling and advertising at issue;

(b)  whether Defendant's practices and representations related to the marketing, labeling

CLASS ACTION COMPLAINT

and sales of its Products were unfair, deceptive, fraudulent, and/or unlawful in any

respect;

(c) whether Defendant breached a warranty created through the labeling and marketing of

its Products; and

(d) whether Defendant's conduct as set forth above injured, and may continue to injure,

Plaintiffs and Class members.

61.     Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are members of a

well-defined class of similarly situated persons, and the members of the Class were similarly

affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint.[12]

Members of the Class are ascertainable from Plaintiffs' description of the class, Defendant's

records, and records of third parties accessible through discovery.

62.     Plaintiffs will fairly and adequately protect the interests of the Classes and have no

interests which are antagonistic to the claims of the Classes.  Plaintiffs will vigorously pursue the

claims of the Classes.

63.     Plaintiffs have retained counsel who are competent and experienced in consumer

protection litigation, including class actions relating to false advertising. Plaintiffs' counsel have

successfully represented plaintiffs in complex class actions and currently represent other plaintiffs

in several similar complex class action lawsuits involving false advertising.

64.     A class action provides a fair and efficient method, if not the only method, for

adjudicating this controversy. The substantive claims of Plaintiffs and the Classes are nearly

---

[12] Plaintiff Koh, who has purchased the Type B Products, seeks injunctive relief on behalf of the Nationwide Type B Subclass and the California Type B Subclass (collectively, the "Type B Subclasses"). Plaintiff Green, who has not purchased the Type B Products, does not seek to represent the claims unique to the Type B Subclasses.

identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case and as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiffs' and the Class members' claims together is manageable.

66.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

67.     The prerequisites to maintaining a class action for equitable relief are met, as Defendant, by representing that all of the Products are "natural" despite the fact that they were made with milk produced with artificial hormones, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

68.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Classes even where certain Class members are not parties to such actions.

69.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's

16                          CLASS ACTION COMPLAINT

systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole. Likewise, Defendant's continuing systematic policies and practices make injunctive relief appropriate with respect to the Type B Subclasses in their entirety.

70.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Unfair and Deceptive Acts and Practices
in Violation of the California Consumer Legal Remedies Act
(on Behalf of the California Subclasses)**

71.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

72.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

73.     Plaintiffs and other members of the California Subclasses are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

74.     Plaintiffs, the other members of the California Subclasses, and Defendant have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

75.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

76.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs and the other members of the California Subclass that the Products are "natural."

77.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

78.    CLRA § 1782 NOTICE. On April 22, 2020 and May 6, 2020, CLRA demand letters were sent (on behalf of Plaintiffs Green and Koh, respectively) to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letters also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Defendant received the letter on behalf of Plaintiff Green on April 30, 2020 and received the letter on behalf of Plaintiff Koh on May 18, 2020, but has failed to comply with the letters. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the Classes, seek compensatory damages, punitive damages, injunctive relief,[13] and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II
### Violations of California's False Advertising Law
### (on Behalf of the California Subclasses)

79.    Plaintiffs incorporates by reference and reallege herein all paragraphs alleged above.

80.    As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are "natural."

---

[13] As set forth above, Plaintiff Koh, who has purchased the Type B Products (and wishes to purchase them again in the future), seeks injunctive relief on behalf of the California Type B Subclass pursuant to the CLRA. Plaintiff Green, who has not purchased the Type B Products, does not seek injunctive relief on behalf of the Type B Subclasses. Plaintiffs do not seek injunctive relief regarding the Type A Products (which no longer contain milk from cows treated with rbST).

81.    At all material times, Defendant engaged in a scheme of offering the Products for sale to Plaintiffs and the other members of the California Subclasses through, *inter alia*, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and offers for sale for the Products.

82.    The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

83.    Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase the Products and are statements disseminated by Defendant to Plaintiffs and the other members of the California Subclasses that were intended to reach Plaintiffs and the other members of the California Subclasses. Defendant knew, or in the exercise of reasonable care, should have known, that these representations were misleading and deceptive.

84.    The above acts of Defendant did and were likely to deceive reasonable consumers, including Plaintiffs and the other members of the California Subclasses, by obfuscating the nature, quality, and ingredients of the Products, in violation of the "misleading" prong of the FAL.

85.    Plaintiffs and the other members of the California Subclasses have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*

86.    Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiffs and the California Subclasses seek an order of this Court that includes, but is not limited to, requiring Defendant to:

CLASS ACTION COMPLAINT

(a) provide restitution to Plaintiffs and the other members of the California Subclasses;

(b) disgorge all revenues obtained as a result of violations of the FAL;

(c) cease its unlawful and deceptive acts, and[14]

(d) pay the attorney fees and costs of Plaintiffs and the California Subclasses.

<u>**COUNT III**</u>
**Violation of California's Unfair Competition Law**
**(on Behalf of the California Subclasses)**

87.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

88.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclasses as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

89.     Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

(a) Violations of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

(b) Violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above.

90.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

91.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiffs and the other members of the California Subclasses were unquestionably deceived regarding the

---

[14] As set forth above, Plaintiff Koh, who has purchased the Type B Products (and wishes to purchase them again in the future), seeks injunctive relief on behalf of the California Type B Subclass pursuant to the FAL. Plaintiff Green, who has not purchased the Type B Products, does not seek injunctive relief on behalf of the Type B Subclasses. *See also, supra*, note 12.

20                                    CLASS ACTION COMPLAINT

"natural" qualities of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent or omit the true facts concerning the benefits of the Products. Those acts are fraudulent business practices.

92.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

93.     Plaintiffs and the other members of the California Subclasses suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

94.     There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which purport to be natural when these unqualified claims are false.

95.     Plaintiffs and the other members of the California Subclasses had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

96.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the California Subclasses.

97.     Pursuant to California Business and Professional Code § 17203, Plaintiffs and the members of the California Subclasses seek an order of this Court that, *inter alia*, requires

Defendant to:

      (a) provide restitution to Plaintiffs and the other members of the California Subclasses;

      (b) disgorge all revenues obtained as a result of violations of the UCL;

      (c) cease its unlawful and deceptive acts; and[15]

      (d) pay the attorneys' fees and costs of Plaintiffs and the California Subclasses.

<u>**COUNT IV**</u>
**Violation of State Consumer Protection Statutes**
**(On behalf of the Class)**

98.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

99.     Defendant's unfair, false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendant's Products have been marketed in, and purchased by Class members in the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); D.C. Code § 28-3904(e), (f); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); §13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat.

---

[15] As set forth above, Plaintiff Koh, who has purchased the Type B Products (and wishes to purchase them again in the future), seeks injunctive relief on behalf of the California Type B Subclass pursuant to the UCL. Plaintiff Green, who has not purchased the Type B Products, does not seek injunctive relief on behalf of the Type B Subclasses. *See also*, *supra*, note 12.

         CLASS ACTION COMPLAINT

§ 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

100.   Defendant violated these statutes by falsely and deceptively labeling the Products as "Natural" and by omitting material facts.

101.   Defendant's deceptive labeling was material to Plaintiffs' and Class members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

102.   Defendant acted willfully, wantonly, and with reckless disregard for the truth.

103.   Plaintiffs and the Class members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

104.   Plaintiffs and Class members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and other appropriate injunctive[16] and declaratory relief.

---

[16] As set forth above, Plaintiff Koh, who has purchased the Type B Products (and wishes to purchase them again in the future), seeks injunctive relief on behalf of the Nationwide Type B Subclass. Plaintiff Green, who has not purchased the Type B Products, does not seek injunctive relief on behalf of the Nationwide Type B Subclass. *See also, supra*, note 12.

**COUNT V**
**Breach of Express Warranty**
**(on Behalf of the Class)**

105.     Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

106.     Defendant provided Plaintiffs and other members of the Class with a written, express warranty that the Products were "natural."

107.     These affirmations of fact or promises by Kraft relate to the goods and became part of the basis of the bargain.

108.     Plaintiffs and members of the Class purchased the Products believing them to conform to the express warranties.

109.     Kraft breached these warranties, resulting in damages to Plaintiffs and other members of the Class, who bought Kraft's Products but did not receive the goods as warranted.

110.     As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiffs and the Class members known the true facts, they would not have purchased Kraft's Products, or would have purchased Kraft's Products on different terms, or would have purchased fewer of Kraft's Products.

111.     Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

### COUNT VI
### Unjust Enrichment
### (In the alternative, on Behalf of the Class)

112.    Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

113.    As the intended, direct, and proximate result of Defendant's conduct, Defendant has been unjustly enriched through sales of Kraft's Products at the expense of Plaintiffs and the Nationwide Class members.

114.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the Class members, in light of the fact that the Products they purchased were not what Defendant represented them to be.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and in favor of the Classes and Subclasses as follows:

A.    An order certifying the proposed Classes and Subclasses; appointing Plaintiffs as representative of the Classes and Subclasses; and appointing Plaintiffs undersigned counsel as class counsel for the Classes and Subclasses;

B.    A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.    An order enjoining[17] Kraft's unlawful and deceptive acts;

D.    An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Subclasses;

---

[17] *See supra*, note 12.

CLASS ACTION COMPLAINT

E.   Monetary damages for members of the California Subclasses pursuant to California Civil Code § 1780;

F.   Monetary damages and statutory damages in the maximum amount provided by law;

G.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

H.   An order awarding Plaintiffs and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

I.   Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: July 2, 2020

RICHMAN LAW GROUP

_____

Jaimie Mak (SBN 236505)
Of Counsel
jmak@richmanlawgroup.com
Kim E. Richman (*Pro Hac Vice* forthcoming)
krichman@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
Facsimile: (718) 228-8522

*Attorneys for Plaintiffs*